FILED

2013 Sep-24  PM 12:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

WENDOLYN LAFLEUR,

      PLAINTIFF,

v.                                        CASE NO.: CV-12-J-2315-NE

DR. ANDREW HUGINE, JR., et al.,

      DEFENDANTS.

### MEMORANDUM OPINION

Pending before the court is the defendants' motion for summary judgment (doc. 26), memorandum (doc. 28), and evidence in support of said motion (doc. 27), to which the plaintiff has submitted a response (doc. 33) and evidence in opposition (doc. 34).  The defendant thereafter filed a reply (doc. 39).  Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

Plaintiff sued her past employer on a variety of counts.  By stipulation dated July 29, 2013 (doc. 23), the plaintiff represented to the court that she is only pursuing her claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (Count VI), and her claim for violation of her due process rights under 42 U.S.C. § 1983 and the 14th Amendment to the United States Constitution (Count VII).  Thus, by separate order, the court shall dismiss plaintiff's claims for Declaratory Judgment

(Count I), Race Discrimination (Count II), Petition for Writ of Mandamus (Count III), Tortious Interference with Contract (Count IV), and False Claims Act (Count V). The parties have also stipulated that plaintiff is not pursuing any claims against defendants Larry Powers, Chasidy Privett, or Dr. Chris I. Enyinda, and the court shall dismiss all claims against these defendants by separate order.

## I.  Factual Background

Pursuant to yearly contracts between Alabama A&M University and the Alabama Department of Education, the plaintiff conducted training on how to incorporate technology into curricula for kindergarten through twelfth grade schools in a twelve county territory of North Alabama.  *See e.g.*, plaintiff depo. at 62-63, 116-117, 158; defendant exhs. 2, 7, 8 to plaintiff depo.  From 2001 forward, funding for this position was provided to Alabama A&M University by the Alabama Department of Education.  Plaintiff depo. at 123.  As a Technology in Motion ("TiM") Trainer, the plaintiff was employed through Alabama A&M's Regional Inservice Center.  However, she was also supervised by Cheri Hayes, the TiM Administrator for the Alabama Department of Education.  Plaintiff depo. at 145-148.

Although plaintiff voiced many complaints during her employment as a TiM Trainer, the facts relevant to the issue before this court concern only her termination from that position.  She asserts she was terminated in violation of her due process

rights, and in violation of her rights under the FMLA.  The plaintiff's issues with her employment began after defendant Dr. Tammy Alexander replaced Dr. Lou Ann Jacobs as the Regional Inservice Center Director.  *See e.g.*, plaintiff depo. at 141-142. Dr. Alexander became the Director in August 2007.  Alexander depo. at 23. Plaintiff's grievances and other complaints concerning Dr. Alexander's treatment of her began in 2010.  *See e.g.*, defendant exhs.  10, 16 and 19 at 5-6 to plaintiff depo. Dr. Alexander testified that beginning in May 2010, she raised concerns she had with plaintiff regarding the consistency of her performance.  Alexander depo. at 35-39. Based on a change to the travel policy implemented by Alabama A&M in December 2010, plaintiff's visits to local area schools declined.  Alexander depo. at 71-72. Despite meeting with plaintiff and Cheri Hayes to fashion a means by which the new travel policy would not impact the plaintiff's job, the plaintiff traveled very little from January 2011 to May 2011.  Alexander depo. at 75-76.

On August 22, 2011, the plaintiff requested medical leave from that date until September 2, 2011, due to job related stress.[1]  Plaintiff depo. at 211-212, 218-223, 270; defendant exhs. 5 and 6 to plaintiff depo.  Alabama A&M granted the leave she requested.  Plaintiff depo. at 223-224.  Dr. Alexander wrote to Dr. Andrew Hugine,

---

[1]Plaintiff requested leave through September 2, 2011, which was a Friday.  Defendant exh. 5 to plaintiff depo.  Because the following Monday, September 5, 2011, was Labor Day, plaintiff's first day back at work would have been September 6, 2011.

Jr., President of Alabama A&M University, on September 7, 2011, seeking permission to terminate the plaintiff.  Plaintiff depo. at 328-329, defendant exh. 11 to plaintiff depo.  When plaintiff returned to the officer on September 12, 2011, she was terminated by Alabama A&M.[2]  Plaintiff depo. at 225; defendant exh 12.  Plaintiff testified that this decision was made only by Alabama A&M, and not by the Alabama Board of Education.  Plaintiff depo. at 148-149.   When Dr. Alexander received approval for plaintiff's termination, she notified Cheri Hayes of the same.  Alexander depo. at 90.

According to Dr. Alexander, her decision to terminate plaintiff arose from considerations such as that plaintiff was not "out in the field" enough to "move the program forward" and that plaintiff was "inflexible" concerning new procedures being implemented both by Dr. Alexander and by Alabama A&M.  Alexander depo. at 42-44, 47-48, 61-62, 68-69.  She testified that the decision to terminate plaintiff was actually made in April 2011 and unrelated to plaintiff's FMLA leave.[3]  *Id*., at 64,

---

[2]According to plaintiff, she conducted out of office workshops during this time, with September 12, 2011, being the first day she returned to work at Alabama A&M.  Plaintiff depo. at 226, 267-268, 270-271.

[3]Cheryl Johnson, Acting Director of Human Resources during the relevant time, was unaware that the plaintiff had taken FMLA leave and stated that Human Resources had no record of plaintiff taking such leave.  Johnson depo. at 137-138.  However, evidence supports a finding that based on the policy in effect at the relevant time, the plaintiff followed the proper procedure for such leave.  *Id.* at 147-148.

101; Johnson depo., at 116-117, 179-180; defendant exh. 2 to Johnson depo.  Dr. Alexander raised her concerns with plaintiff's productivity in plaintiff's May 2011 performance review.  Alexander depo. at 52-56.  In response, plaintiff alleged the evaluation was evidence of additional harassment, hostility and retaliation by Dr. Alexander.[4]  Plaintiff exhs. 10 and 11 to Alexander depo.  Plaintiff asserted her reduced productivity was a direct result of Dr. Alexander's policies.  *See* plaintiff exh. 11 at 312, 333, 335

The plaintiff agrees she was a staff employee, as opposed to a faculty member, of Alabama A&M, and thus an "at-will" employee and subject to termination without cause with three weeks notice.  Plaintiff depo. at 247-248, 252, 278, 335.  *See also* Johnson depo. at 42, 52, 63, 113.  The letter she received September 12, 2011, informed plaintiff she would be paid through September 30, 2011, which she was.  Plaintiff depo. at 327-328; plaintiff exh. 1 to Alexander depo.  Pursuant to the staff handbook, which plaintiff acknowledged receiving, the plaintiff received the notice

---

[4]As previously stated, no such claims are before this court.

5

she was due prior to a termination without cause.[5]  *See e.g.*, defendant exhs. 3 and 4 to plaintiff depo.

Upon her termination, the plaintiff filed a Charge of Discrimination with the EEOC.  Defendant exh. 20 to plaintiff depo.  Although plaintiff lists many bases for her belief her termination was discriminatory, she did not mention violation of her FMLA rights in that Charge.  *Id.*  She also submitted an employee grievance on September 15, 2011, contesting her termination.  Plaintiff exh. 11 to Johnson depo.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law.  *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.1997).

---

[5]The plaintiff makes a passing argument that September 12, 2011, to September 30, 2011, is not three full weeks.  Plaintiff's memorandum at 8, ¶ 38.  However, the plaintiff does not identify any means by which she was injured as a result of not having three complete weeks notice.  Rather, as discussed herein, plaintiff asserts she worked pursuant to a contract, and therefore was not an "at-will" employee under the staff handbook, rendering the issue of whether the defendants complied with the staff handbook moot.

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

### III.  LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence.

*Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11ᵗʰ Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11ᵗʰ Cir.2000). With these standards in mind, the court considers the plaintiff's claims.

### A.  FMLA Claim

The FMLA entitles a covered employee to take up to twelve weeks of leave in a twelve month period for a "serious health condition" of the employee. *Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1305 (11ᵗʰ Cir.2001). The FMLA prohibits an employer from interfering with this right. 29 U.S.C. § 2615.

Unrelated to the merits of this claim, the defendants argue that the plaintiff's FMLA claim against them in their individual capacities is due to be dismissed. Defendants' brief, at 21-22. Plaintiff's response in opposition to defendants' motion for summary judgment clarifies that her claim under the FMLA is brought solely against the defendants in their official capacities.[6] *See* plaintiff's memorandum (doc. 34) at 1, 11. In their official capacities, the defendants are "state officials" for

---

[6]Had the plaintiff not conceded the same, the law of this Circuit is clear:

> *Welch* establishes as the law of this circuit that a public official sued in his individual capacity is not an "employer" subject to individual liability under the FLSA. Because "employer" is defined the same way in the FMLA and FLSA, *Welch* controls this case.

*Wascura v. Carver,* 169 F.3d 683, 686 (11ᵗʰ Cir.1999); citing *Welch v. Laney*, 75 F.3d 1004, 1011 (11ᵗʰ Cir.1995)

purposes of Eleventh Amendment sovereign immunity.  The plaintiff concedes that
the Eleventh Amendment bars suits for monetary damages against state officials in
their official capacities.   Plaintiff's memorandum, at 14.   The court considers this
claim only to the extent that the plaintiff seeks prospective relief, that is, she wishes
to be restored to the position of TiM Trainer.

Defendants next argue that there is no evidence that they were plaintiff's
"employer" for purposes of the FMLA.  Defendants' brief at 22-23.  The court finds
ample evidence that the plaintiff was "employed" by Alabama A&M.  Although
funding for her position was provided through the Alabama Department of Education,
the plaintiff was provided an office, supervised, and directed by Alabama A&M.  She
was also terminated by Alabama A&M, allegedly pursuant to Alabama A&M's staff
handbook.   Her termination notice states "this letter constitutes your three (3) week
notice of the termination of your employment at the University."  Plaintiff exh. 1 to
Alexander depo.  Defendants cannot now argue plaintiff was not an "employee" of
the University.

To establish an FMLA interference claim, the employee "need only show that
his employer interfered with or denied him an FMLA benefit to which he is entitled."
*Leach v. State Farm Mut. Auto. Ins. Co.*, 431 Fed.Appx. 771, 776 (11th Cir.2011)
(citing *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d

1199, 1206–07 (11th Cir.2006)). The employer's motives are irrelevant. *Strickland*, 289 F.3d at 1208. "However, if, the employee alleges that the employer denied the employee the right to reinstatement following FMLA leave,'the employer has an opportunity to demonstrate it would have discharged the employee even had she not been on FMLA leave.'" *Leach*, 431 Fed.Appx. at 776 (quoting *O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1354 (11th Cir.2000)). If an employer can show that the reasons why an employee was not reinstated to a position was "wholly unrelated to FMLA leave" then an employer is not liable. *Id.*

Here, the leave taken by the plaintiff was protected by the FMLA, thus the question before the court is whether the defendants "interfered" with that leave by terminating the plaintiff after she returned from the same.[7] According to the plaintiff, her issues with Dr. Alexander began long before she requested this leave in August 2011. In fact, the plaintiff testified she knew in March 2010 that Dr. Alexander was taking steps to terminate her employment. Plaintiff depo. at 307. The undisputed evidence establishes that Dr. Alexander discussed possible termination of the plaintiff

---

[7] The plaintiff states that she "does not offer a response to Defendant's Motion for Summary Judgment on the FMLA retaliation claim." Plaintiff's memorandum, at 19. As such, the court only considers plaintiff's claim as one for interference under the FMLA. *See e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1326 (11th Cir.2000)("failure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.,* 325 F.3d 1274, 1284 (11th Cir.2003); see also *Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1322 (11th Cir.2001).

with Cheryl Johnson in April 2011. Although her notice of termination coincided with her return from FMLA leave, Alabama A&M was under contract with the Alabama Department of Education to provide plaintiff as the TiM Trainer through September 30, 2011. *See e.g.*, defendant exh. 8 to plaintiff depo.

The plaintiff asserts that "the defendants cannot demonstrate that plaintiff was not entitled to reinstatement following FMLA-protected leave." Plaintiff's memorandum, at 15. She argues that the defendants interfered with her right under the FMLA to be reinstated to her position upon the conclusion of her FMLA leave. *Id*. Summarizing the applicable law on this issue, the Eleventh Circuit recently held:

> "To prove FMLA interference, an employee must demonstrate that [s]he was denied a benefit to which [s]he was entitled under the FMLA," such as "the right following FMLA leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position." *Martin v. Brevard Cnty. Pub. Schs*., 543 F.3d 1261, 1267 (11th Cir.2008) (quoting 29 U.S.C. § 2614(a)(1)(A)). "[T]he employer's motives are irrelevant" to an interference claim. *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir.2001). ***But if the employer shows it would have terminated the employee had she not been on leave, then refusal to restore her to her prior position will not support an FMLA interference claim***. *Id*.

*Turner v. Florida Prepaid College Bd.,* 2013 WL 3328748, 4 (11th Cir.2013) (emphasis added). *See also Schaaf v. Smithkline Beecham Corp*., 602 F.3d 1236,

1241 (11th Cir.2010).  The plaintiff concedes this is the law the court must apply.  *See* plaintiff's memorandum, at 15.

The defendants assert that the decision to terminate plaintiff was made well before her FMLA leave, and was wholly unrelated to the same.[8]   Plaintiff has no right to reinstatement to her position if she would be fired regardless of the leave. 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee has been continuously employed during the FMLA leave period.").  In response, plaintiff argues that a jury could find that plaintiff had a contract for her employment and hence that was why defendants waited until September 30, 2011, to terminate her.   Plaintiff's memorandum, at 18.  As discussed *infra*, the plaintiff has produced no evidence that she had an employment contract with Alabama A&M.  More importantly, such an

---

[8]Defendants also argue that as plaintiff's leave was for self care, they are immune from suit pursuant to *Garrett v. University of Alabama at Birmingham Board of Trustees*, 193 F.3d 1214, 1216 (11th Cir.1999), and its progeny.  Defendants' brief at 28-31.  In *Garrett*, the Eleventh Circuit Court of Appeals held that Congress failed to abrogate validly the States' sovereign immunity in the FMLA's self-care provisions. *Id.*, 193 F.3d at 1219 ("we hold in this case that Congress did not have the authority to abrogate the sovereign immunity of the states on claims arising under the provision [the self-care provision] at issue here."), *rev'd on other grounds Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *see also Batchelor v. S. Fla. Water Mgmt. Dist.*, 242 F.Appx. 652, 653 (11th Cir.2007) (unpublished) (affirming *Garrett's* validity and stating, "Our holding in *Garrett* that Congress is without authority to abrogate state sovereign immunity for claims arising under the self-care provision of the FMLA remains the law of this Circuit.").

However, the court can find no case which has ever applied the logic of *Garrett*, a case under 29 U.S.C. § 2612, to claims under 29 U.S.C. § 2614, for restoration to employment.

assertion has no bearing on whether plaintiff's termination was related to her FMLA. Specifically, the plaintiff has failed to address the defendants' argument that she would have been terminated regardless of her taking FMLA leave.

The plaintiff does not dispute that Dr. Alexander went to Cheryl Johnson in April 2011 to discuss terminating plaintiff's employment. *See e.g.*, plaintiff's memorandum at 17-18. The uncontradicted evidence is that plaintiff's medical leave had no bearing on the defendants' decision to terminate her employment, because that decision had already been made.[9]   Based on the foregoing, the court finds the defendants' motion for summary judgment on the plaintiff's FMLA claims is due to be granted, and shall so rule by separate order.

*Due Process and § 1983*

Assuming for purposes of this opinion only that the plaintiff had some sort of contract for employment with Alabama A&M, the plaintiff cannot show that any of her rights under that contract were breached. As stated, the plaintiff makes much of

---

[9]In their reply, defendants note the plaintiff raised interference with her right to reinstatement for the first time in her response to their motion for summary judgment. The defendants argue that plaintiff actually did return from her FMLA leave on September 6, 2011, and continued her employment through September 30, 2011. Thus, because she was reinstated to her position, the defendants allege the plaintiff cannot state a claim for interference. Because the plaintiff would have been terminated regardless of her FMLA leave, the court does not delve into the issue of whether plaintiff actually "resumed her duties." Although defendants aptly point out that the plaintiff's termination was not effective until September 30, 2011, the evidence also established that she was told September 12, 2011, that she was removed from her responsibilities, effective immediately.

the time disparity between the decision to terminate her and her actual termination, suggesting that it must have been delayed until September 30, 2011, because that was when her employment contract ended, as evidence that she worked pursuant to that contract.

The relevant language from the contract states:

THIS AGREEMENT, entered into on this the 1st Day of September, 2010 by and between the ALABAMA STATE DEPARTMENT OF EDUCATION (SDE) and ALABAMA A&M UNIVERSITY, A&M-UAH REGIONAL INSERVICE EDUCATIONAL CENTER, P.O. Box 291, Normal, AL, 35762, is in accordance with the resolution passed by the Alabama State Board of Education on September 19, 1967, authorizing the State Superintendent of Education to enter into various contracts and has the following stipulations:

....

VI.    The University Inservice Center agrees to provide to the SDE the services of Wendolyn LaFleur as a Technology in Motion Trainer (TIM Trainer).    The University Inservice Center hereby assigns to fulfill the responsibilities associated with that position during and throughout the Term.    In the event the individual is currently employed by a Local Education Agency (LEA) it will be necessary for the University Inservice Center to contract with the LEA.  The duties will include: providing technology training for teachers and administrators.... and performing other duties as assigned by the TIM Project Director of the Coordinator of the Offices of Technology Initiatives.

....

14

> XVIII.   The duration of this agreement is October 1, 2010
> through September 30, 2011.   The agreement may be
> terminated by either party upon receipt of a 30-day written
> notification.

Plaintiff ex. 9 to Alexander depo.

The viability of plaintiff's due process claim depends on whether she had a "property right in continued employment.*"  Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).   The law is well established that that the only process due is procedural.  *Harris v. Board of Educ. of the City of Atlanta,* 105 F.3d 591, 596 (11th Cir.1997); citing *McKinney v. Pate*, 20 F.3d 1550,1560 (11th Cir.1994).  Even when a state procedure is inadequate, however, "no procedural due process right has been violated unless and until the state fails to remedy that inadequacy." *Id*. Therefore, a plaintiff does not state a claim cognizable under 42 U.S.C. § 1983 unless and until the state refuses to make available a means to remedy the alleged procedural deprivation. *McKinney,* 20 F.3d at 1563.

Following plaintiff's argument that she was a contract employee, as established by the Memorandum of Agreements between Alabama A&M and the Alabama Department of Education, the plaintiff fails to explain how that document, to which she was not a party, created a contract between her and Alabama A&M as her employer.  Even if the plaintiff is correct in this assertion, the contract in issue expired on September 30, 2011.  The plaintiff cannot claim a right to continued

15

employment based on a contract that expired at the same time as her employment ended.[10]   Absent a valid employment contract, there can be no protected property interest in continued employment. *Selby v. Quartrol Corp.*, 514 So.2d 1294 (Ala.1987).   Without a "legitimate claim of entitlement," there is nothing to protect under the due process clause. *See Hatcher v. Board of Public Educ.*, 809 F.2d 1546, 1551 (11th Cir.1987) (citation omitted).

Plaintiff was a non-tenured employee classified as "at-will" by Alabama A&M. Alabama law is clear that employment is terminable at will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration. *See e.g., Ex parte Moulton,* 116 So.3d 1119, 1133 (Ala.2013).   Thus if an argument could be made that the plaintiff did work pursuant to the contract between Alabama A&M and the Alabama Department of Education, the contract expired each year on September 30, without any guarantee that the plaintiff would be contracted for that position the following year.

The letter plaintiff received from Alabama A&M terminating her employment states in relevant part:

---

[10]Rather, the plaintiff repeatedly agreed during her deposition, and all the evidence before this court supports a finding that plaintiff was an "at-will" employee, subject to the staff handbook.  Such a conclusion is contrary to a finding that the plaintiff had any sort of property interest in her job as a TiM Trainer.

16

> It has been recommended to and approved by Dr. Andrew Hugine, Jr.,
> President of Alabama A&M University, that your employment in the
> AAMU/UAH Regional In-service Center end effective September 30,
> 2011.
>
> In accordance with University procedures, this letter constitutes your
> three (3) week notice of the termination of your employment at the
> University.  You are no longer required to report to work; however, you
> will remain on the University's payroll through September 30, 2011....

Plaintiff exh. 1 to Alexander depo.

In an attempt to avoid the conclusion that, even if the plaintiff had a contract

for employment through September 30, 2011, she was employed through that date,

the plaintiff asserts she was actually terminated September 12, 2011, when she was

given notice of her termination, rather than September 30, 2011, when the contract

expired, thus creating a right to a pretermination hearing.  In attempting to fit the

foregoing into a § 1983 procedural due process rights violation, the plaintiff argues:

> Plaintiff had an employment contract with Alabama A&M, as evidenced
> by the Memorandum of Agreement between Alabama A&M and the
> Alabama State Department of Education for the TIM program.  There
> was a Memorandum of Agreement in place for the last six fiscal years
> of her employment.  Each Memorandum of Agreement referred to
> Plaintiff by name, and required Alabama A&M to provide her services
> as the TIM Trainer.  While Plaintiff was not a party to the contract, the
> Memorandum of Agreement is evidence that she had a verbal agreement
> with Defendants to be employed as the TIM Trainer.
> ....
> In April of 2011, when the decision to terminate her was purportedly
> made, and on September 12, 2011, the date the Plaintiff was notified of
> her "no cause" termination, told to stop reporting to work and was
> escorted from campus by security, Plaintiff had a property interest in

17

continued employment by virtue of an employment contract.  Had she
remained employed following the expiration of the contract term, the
Plaintiff may well have become an "at-will" employee, but instead, she
was constructively discharged on September 12, 2011, during the term
of the contract.  Thus, she was entitled to pretermination due process.

Plaintiff's response, at 20-21.

If the plaintiff is suggesting that her verbal agreement coincided with the year

to year Memoranda of Agreements, then the plaintiff could not have been deprived

of any due process right because her expectation of continued employment could go

no longer than the term of the Memorandum referencing her as the TiM Trainer.  If

the plaintiff is actually suggesting that she had a verbal agreement with defendants

which lasted longer than the term of each of the Memoranda, the same is void under

the Alabama Statute of Frauds.   Faced with quite similar arguments when the

University of Alabama fired head football coach Michael C. Price, the Eleventh

Circuit succinctly stated:

> It is well-established that "[t]o have a property interest in a benefit, a
> person must have more than an abstract need or desire for it. He must
> have more than a unilateral expectation of it. He must, instead, have a
> legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S.
> 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Even if Price had orally
> accepted the terms of the Draft Proposal contract, Alabama's Statute of
> Frauds requires that the contract be reduced to writing and signed, which
> was not the case here. *See White v. Mississippi State Oil and Gas Board*,
> 650 F.2d 540, 543 (5th  Cir.1981) (plaintiff had no property interest in
> his position because contract failed to comply with state's Statute of
> Frauds); *Spruiell v. Stanford*, 258 Ala. 212, 61 So.2d 758, 763-64
> (Ala.1952) (noting that failure to comply with statute of frauds renders

18

such contract void); see generally Ala.Code § 8-9-2 (stating that writing requirement of statute of frauds applies to "[e]very agreement by which, by its terms, is not to be performed within one year from the making thereof"). Absent a valid employment contract, there can be no protected property interest in continued employment. *Selby v. Quartrol Corp.*, 514 So.2d 1294 (Ala.1987) (noting that absence of signed writing of oral discussions for a three year employment contract created an invalid, unenforceable permanent employment contract).

If considered an at-will employee, under established law of this Circuit, there is no property interest in at-will employment. *Green v. City of Hamilton Hous. Auth.*, 937 F.2d 1561, 1564 (11th Cir.1991) (noting that "if [the terminated employee] can show that his employment was in fact 'permanent' or terminable only for cause, he can establish a property interest entitling him to due process protection"). If considered an agreement to agree in the future to terms of an employment contract, that situation is not enforceable under Alabama law unless the future contract specifies all its material and essential terms, and leaves nothing to be agreed upon as a result of future negotiations. *See Muscle Shoals Aviation, Inc. v. Muscle Shoals Airport Auth.*, 508 So.2d 225, 227 (Ala.1987); see also *Clanton v. Bains Oil, Inc.*, 417 So.2d 149, 151 (Ala.1982) (noting that "agreements to later agree are not enforceable under Alabama law") (internal quotation and citation omitted).

Thus, the district court did not err by holding that Price did not have a constitutional property right in a contract that was never signed and was thus void under Alabama law. This is true even though the University had admitted to the existence of the agreement and partial performance had begun, as is the case here. *See Ramsay v. Clarke County Health Care Auth.*, 829 So.2d 146, 154 (Ala.2002). Thus, the district court properly afforded Whitt qualified immunity for the individual claims, and Eleventh Amendment immunity for the claims in his official capacity, and did not err in dismissing Price's complaint for failure to state a claim upon which relief may be granted.

*Price v. University of Alabama,* 2004 WL 1253201, 2-3 (11th Cir.2004).

The plaintiff also argues, in the alternative, that she was a third-party beneficiary of the Memorandum of Agreement, and thus had a property interest by that means. Plaintiff's memorandum, at 21. The court finds this argument to be without merit. The Agreement was clearly for the benefit of teachers in the K-12 system, and not entered for plaintiff's benefit. Rather, plaintiff was a means by which the Alabama Department of Education and Alabama A&M could provide that benefit to the K-12 recipients. Even if plaintiff was perceived as a beneficiary of the relevant contract, that contract expired effective September 30, 2011. Thus, a finding of third-party beneficiary status is of no assistance to the plaintiff.

Finally, turning to the plaintiff's constructive discharge argument, the plaintiff suggests that because she was notified of her termination on September 12, 2011, and told she would be paid through September 30, 2011, she was constructively discharged on September 12. *See* plaintiff's memorandum, at 20 and 23 n. 2. The plaintiff has made no suggestion that she stopped accepting her pay as of September 12, 2011, or that she returned sums received after that date. Because she continued to receive income through September 30, 2011, the plaintiff was not constructively discharged prior to that date.

The court can find no deprivation of plaintiff's constitutional rights because the plaintiff has no legal basis to claim a property interest in continued employment.

20

Therefore, the court does not reach the issue of whether the defendants are entitled to qualified immunity from such a claim.

## <u>CONCLUSION</u>

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court is of the opinion that the defendants' motion for summary judgment on the remaining counts of the plaintiff's complaint is due to be **GRANTED** and shall so rule by separate Order.

**DONE** and **ORDERED** this the 24th day of September, 2013.

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE